Morning and may it please the court. I'm Joshua Weiss from the Federal Public Defender's Office here on behalf of Appellant Mark Wilson. I'd like to reserve three minutes for rebuttal, and I will keep my eye on the clock. I intend to focus on this speedy trial issue, but I'd be glad to address any questions the court may have about any of the claims we raised on appeal. That's a good focus, so go ahead. Thank you, Your Honor. The Sixth Amendment states that once someone is accused, he is afforded the protections of the Sixth Amendment speedy trial right. And the Supreme Court has repeatedly stated that the right is triggered when someone is by indictment, information, or other formal charge, that's in Marion, or when the defendant is indicted, arrested, or otherwise officially accused. That's the language in both Doggett and McDonald. That latter category has to be the complaint. There is simply no other formal charge to which the Supreme Court could be referring. And by any definition... Well, the Nye circuit, as near as I can tell, has conflicting decisions on this issue, mostly going back to the 1970s. So we're open to competing possibilities, are we not? Yes, Your Honor. And generally, a panel of the court can't just choose between conflicting case law. But as I noted in the briefs, I believe that the favors decision that held that a complaint does not trigger the right is clearly are consciable with subsequent Supreme Court case law, because that was decided before the decisions I was just referring to that refer to this third otherwise officially accused. Well, do we have to decide in order to decide your case? Or I guess, would you... Let's just say we decide that it's the indictment. Do you lose then? Well, Your Honor, there's... Or do you win either theory? I didn't mean to interrupt. My apologies. No, no, no, you didn't. Well, we have close to a seven year years of delay here. And a good chunk of that was between complaint and indictment close to four years. You know, we note in the briefs that I think there's a speedy trial violation if the court were to subtract various portions of that delay. But I do believe that the complaint to indictment is a very important portion of that, especially since there was no reason for that delay other than the government's intentional decision to continue investigating and add charges, which, as we know, it is not considered a justifiable reason for delay once there is a pending charge. So, but Your Honor's question, I think, goes to what we kind of have two steps here. First is whether the complaint triggers the right. And then under the once the right is analyzed for the full, however long the court decides, I believe, six years and three quarters, whether the Barker factors are met. And maybe we could go through both of those sections. But like I was noting, let me ask you hypothetically, just let's just say I said every delay was the government's fault. But just hypothetically, I'm not we haven't talked about the case or I'm just giving you and I know that the government's not going to concede that or but just say hypothetically. But then I said there was no prejudice to you. Then do you lose? Don't you can still lose, right? Well, Your Honor, I would I mean, I'm just saying I'm kind of putting my arms around the law, every option. I mean, I could technically say that every fault was the government. But but there was no prejudice to you because all the people that died are the people that couldn't remember or were actually favorable to the government. I know that that's not what you're right. I mean, the four factors are supposed to be considered in totality. And if the court were to find no prejudice, it would be a difficult issue. But I do want to reframe that prejudice question, you know, with a with a delay this long, especially if if the entire delay was to be put on the government. But even if just the four years between complaint and indictment were to be put on the government, then courts are over and over again clear that what we have is a very strong presumption of prejudice. And if I could quote the Third Circuit from Velazquez on that point, the court said the government's argument in effect turns its burden to just prove general prejudice on its head by suggesting that its rebuttal effort must be found successful unless Velazquez can identify prejudice. So again, and Doggett, the Supreme Court, trying to explore the outside limits of all of this. I guess the backdrop is Judge Rakoff is saying there isn't there is some conflict over whether it's the complaint or the indictment. It would appear to me that it certainly makes your case easier if all the if the government is at fault on everything. But there's always still a rebuttable presumption on prejudice, but it's harder for them to climb that hill, right? And is there any case that is there any case out there specifically, either the Supreme Court or the Ninth Circuit that would say you win automatically? Nothing is automatic, Your Honor. But I do think Doggett made clear that with a delay this long, it is quite difficult and not. I think the language Doggett uses that it probably the government probably could not have overcome the presumption. The single biggest delay was when your client was fighting extradition. And if your client had thought that's certainly his right. But if your client had thought, oh, my gosh, if I fight extradition for all these years, I'm going to lose some witnesses who would be helpful to me. That's a choice he made. Why is that attributable to the government? Well, Your Honor, I believe if, as your Honor said, it was his right to fight extradition. And he was essentially asserting defending himself against serious charges in the court of law. And I will add, you know, he won initially overturning the first section. It wasn't just a frivolous delay tactic to appeal here. And we wouldn't generally say that if a defendant asserts other rights of his pretrial and litigation that he thereby gives up on speedy trial. For example, if someone were to bring a different motion to dismiss an indictment or litigate. Is that really true? I mean, for example, all the time the defendant will agree to waive the statute of limitations because he thinks that he will in the end be able to persuade the government not to indict or whatever. He can't come back afterwards and say, oh, my gosh, this case is being brought in violation of the statute of limitations. He waived that. And why isn't implicit in his fighting extradition a similar kind of waiver so far as the period of the extradition? I would put the court to two cases on that point. First is Mendoza, where this court said that even though after the delay at issue, which was six years, even though the defendant after that delayed trial, not even for any meritorious motion, just kept asking for continuances for over a year, that year of delay by the defendant didn't undermine his ability to assert the speedy trial delay from the period before the I agree for the period before. I'm just saying I don't see how the very long period of extradition can be attributed to anyone but your client in terms of the prejudice factor that Judge Callahan was was referencing. Oh, your honor, the entire delay that we're asserting is the pre extradition delay of six years and three quarters. Once the government formally requested extradition, we agree that at that point, the litigation was proceeding. Both parties had were were, you know, determining whether there was the charges were substantial enough to extradite my client. And I would say, you know, I do want to emphasize a factual point that maybe didn't I didn't say clearly enough in the briefs, but I think the government tends to articulate that extradition period as though my client were just frivolously delaying his trial. But I do believe that this was a serious litigation over his rights in Canada, where I agree it didn't. That doesn't go to the delay, but it doesn't undermine his ability to assert the delay from before the extradition. And if I could just is, is there anything in the record that indicates that there was a witness who would have been available if they had proceeded much more quickly, who was not available after that four and a half year to look? I don't know about. Well, one thing I would point to is that in the district court's decision, it does note that there was physical evidence lost in the pre indictment in the period between complaint and indictment. That's at ER nine. And the district court ended up saying that, well, the district court analyzed that period under the due process analysis, whereby so that the court found that because the government didn't act in bad faith and intentionally lose those documents, and because the defense couldn't show actual prejudice to his trial, it didn't violate the due process clause. But the district court did make that factual finding, I believe, at ER nine. And again, we pointed to several witnesses who, during the trial, noted their losses of memory and in ways that seriously prejudiced the defense in terms of witnesses who said they couldn't remember their previous statements, undermining the defense's ability to impeach them. And whether those losses of memory occurred because of the pre-extradition request period or post-extradition request period, I don't think is really the way the courts have analyzed this question. Because like I was talking about, if the defendant asserts his rights or even just delays trial once the government starts bringing the case, this is what Corona Verbera said and Mendoza as well, the court still applies a strong presumption of prejudice that is very difficult for the government to overcome for the period that it delayed before it started really litigating the case. Let me ask you a question on that very point. And it relates to our decision in Aguirre. So let's assume that we start the clock when the complaint was filed. As I understand it, your client became aware of the complaint's existence relatively early in that roughly four-year period. Is that right? Yes, I don't think the record is exactly clear on whether it was 2001 or 2003, but my client indicated that he was at least aware that the government was looking to arrest him in 2005. Okay, so I read Aguirre as saying that in that scenario where the defendant is aware that there are charges pending against him and that if he's interested in speedily resolving them, he can take steps to basically turn himself in and present himself to the authorities. That in that scenario where he doesn't do that, basically you're not entitled no matter what the other circumstances to a presumption of prejudice. That's how I read that case. Am I wrong in reading it that way? Because it seems to me if that is controlling here, you will inevitably lose. If you're not entitled to a presumption of prejudice and you have to show actual prejudice, I just don't think you can do that. Conversely, if you are entitled to a presumption of prejudice, I don't think the government can rebut it. So it seems to me that's really one of the critical considerations here. And I read Aguirre as depriving you of the ability to obtain the presumption of prejudice because your client was aware very early on of the charges and did not avail himself of the opportunity to have them resolved quickly. So how do you respond to that? I think the case is distinguished between a situation where the defendant actively evades arrest as opposed to lives in the open and just doesn't affirmatively bring himself to court. And here the district court found that Mr. Wilson did not actively evade prosecution and that he was living openly and under the law. Just to jump in, counsel, Aguirre does not say that. Aguirre is not talking about taking active steps to evade arrest. It's merely talking about once you become aware that charges are out there, if you want a speedy trial, you have the ability to obtain that. And if you don't avail yourself of that opportunity, you are not entitled to a presumption of prejudice. That's how I read the case. Your only way of trying to distinguish that is to say that Aguirre was only talking about the scenario in which you're taking active steps to evade arrest? Well, I would note, Your Honor, that I think that reading of Aguirre would conflict with the decision of the Supreme Court in Barker, as well as this court's decision in Alexander, where in Barker, the government proposed this so-called demand waiver rule, where if the court rejected that analysis and instead said that the defendant's assertion of the right gets factored into the four Barker factors. And in Alexander, there was the exact same situation we have here, where the government delayed pre-extradition requests, the defendant fought extradition before starting a speedy trial, and the court simply said, well, the assertion of the right factor is awash at that point, but the fact that he fought extradition did not affect the court's prejudice analysis. I see I'm running very low on time. That's all right. That's all right. I'll give you two minutes for rebuttal. Judge Watford, did you want to explore on that answer further, or is your question answered to the extent that counsel's answered it? Maybe if I could just ask one follow-up. Sure, go ahead. Just to be clear, I'm not talking about a waiver analysis as we engaged in in Manning, for example. I'm talking about as part of the weighing of the four factors. We have Doggett's statement that says, in that case, it was a counterfactual, but it said if the defendant there had been aware of the indictment against him, that the third factor would weigh heavily against him in the analysis. So we have that. So I don't think Barker is controlling in the way that you described. Then we have after that, which, as I said, it's analyzing the third factor again, and it's trying to figure out under what circumstances does the defendant, even though the delay is quite long and otherwise might trigger a presumption of prejudice, under what circumstances can the defendant claim that? As I said, Aguirre, to my reading, is not talking about the defendant taking any active steps. It's just saying because the defendant there knew that these charges were out there, not that he had an obligation to present himself, please try me, but that if he really was interested in this trial and he wanted to assert his rights, he had the ability to do so and he chose not to. So therefore, we are going to place basically the blame for all of that delay after he was aware of charges on him, not on the government. And so that's what I need your help with, if you're going to prevail here. Sure. Well, I recognize a bit of attention in the court's case law on this, but I do think that Aguirre is actually quite different from the situation we have here, where the defendant there told the government that he would show up to the court and notify the government when he arrived back in the U.S., basically telling the government that it was not on them to look for him because he was going to bring himself to trial. Excuse me. And then he essentially snuck into the U.S. and never notified the government after he had told them that he would. And that's quite a different situation because it essentially told the government, you know, it's not on you to find me. I'll just bring myself in pretty soon. Just give me a couple of months so I could finish my other business outside of the country. And in that situation, I take your Honor's point that that's not the same as someone who's running away from the authorities, but it's very different than someone who's just, you know, living out in the open, never told the government he was going to come turn himself in, made very clear from the beginning that he planned on essentially, you know, asserting his right in the courts of his home country, defending his innocence there. In that situation, I believe it is on the government to kind of pursue him because, again, there was nothing close to what happened in Aguirre, which is essentially misleading the government there. And if I could end on that, it just, again, quoting the third, I recognize it's the Third Circuit, but the decision in Velazquez, there was a similar situation there where the defendant knew of the, what, the investigation against him for the seven years of delay, knew of the charges for some of that period, and the court said that that fact that he knew that did not factor into the analysis since, quote, he had no duty to bring on his own trial, and his knowledge of the charges does not diminish any negligence in failing to pursue him. So I do think the question is, where does the case fall in the line of something like evasion, which I do think, I take it on his point that it wasn't technically that in Aguirre, but closer to that versus someone living in the open, as the district court found Mr. Wilson was doing here, and just not bringing himself affirmatively to trial, where I believe there, the question just goes to the assertion of the right factor, not to the prejudice problem. Thank you. Judge Rakoff, did you want to ask any additional questions of Mr. Weiss? No, thank you very much. All right, so we have gone over time, but we took you over, so I'll give you two minutes for rebuttal, okay? All right, Mr. Shea? Good morning, Your Honors, and may it please the Court. Roger Shea on behalf of the United States. In this case, after defrauding elderly victims out of millions of dollars, the defendant did not want to go to trial. As Your Honors have noted, he fought extradition for 10 years and complains of the delay that he caused. The district court rightly denied defendant's motion to dismiss, and did not clearly err in its finding that the government diligently pursued extradition. So, I will again focus on the delay issue, as Your Honors have focused with the Court. So, just kind of like I asked Mr. Weiss to sort of outline, are there any areas where you would concede that the delay is on the government, as we go through all of these? No, Your Honor. From the period of 2000, when the complaint was filed, and the defendant was not in custody, the chief evil recognized by Marian McDonnell, the government was diligently pursuing an extradition. As noted— No, okay, but let's just say, okay, let's just say, would you agree that it's not entirely clear whether we go with the complaint or the indictment? The government pushed back a little bit, looking at the Supreme Court case law, but yeah, I think that's up for reasonable debate, but it's supported by the arrest. Okay, let's assume that we give the defendant the benefit of the doubt, and say, we're going to go with the complaint. All right, and then Judge Watford has just outlined that at some point, the defendant became aware, and Mr. Weiss has conceded, whether it be 2000, I don't know, 2003, or I don't know, whatever, shortly. So, if we go with the complaint, and when he became aware, how much time is there there? It's about six and a half years, I think, that the defendant alleges in the appellate brief, and the government would still win under the Barker factors, as noted in our brief there. One giving considerable deference to the district court, which found that the government reasonably pursued that tradition, and as Judge Watford noted, that would put the burden on defendant to show actual prejudice, and I'll argue in the alternative, even if there was a presumption that defendant, that the government would have to rebut, defendant could still not win, as under Marion and Loudhawk, the Supreme Court noted that delays oftentimes prejudice the government, and it's impossible for the government sometimes to prove their case, because witnesses died, which was the exact case, which happened here. So, enough didn't die, though, because he still got convicted, so enough didn't die. So, that's correct, that prejudice, so. And Daggett was focused on exculpatory evidence, like in Manning, where the defendant claimed that he lost credit cards that might have showed where he was during the time of the murder. Defendant has done nothing here, and let's focus on the 6.5-year delay, assuming that the right attached with the complaint, and I'd like to address that later. As noted in Gregory, this court needs to focus on the prejudice caused by the delay under the Barker Inquiry, so that's prejudice caused by that specific 6.5-year delay, as alleged by defendant, and in that time period, defendant cannot show any actual prejudice. Even pointing to the tapes, defendant was the one who was aware in 2001, when the Canadian authorities executed a search warrant, that he might have been under investigation. There's a report at ER 372, where defendant acknowledged in 2001 that he didn't want to come to the United States, because he would have been arrested, and in 2003- So, let me, let me stop there. So, what is- The defendant became aware that charges were outstanding against him. I apologize- Can you repeat that, Judge Watford? You froze for a sec. Yeah, I know. I just saw that notification. I was asking, what's the best record support for the date on which the defendant became aware that charges were outstanding against him, that the complaint had in fact been filed? The clearest indication of the record was in 2003, which defendant submits a declaration stating he was aware, that's a clear admission. We'd also argue, in 2001, when the FTC filed a complaint against him, there was a report that stated he didn't want to come across the US, because he feared he'd be arrested. That's a little less clear, but it's clear by 2003, he was aware of the charges. So, I have a question about some of the more specific delays. For example, from July 2004 to July 2005, as I understand the government's position, you're saying, well, we were trying to lure him through a covert operation. But of course, that didn't preclude also moving for extradition, but you didn't. And then, after you gave up on that, you spent about a year and a half preparing the extradition request, which seems inordinate. Yes, Your Honor. As noted in Barker, the right to speedy trial is relative in the context of the case. And here, as it's sworn declaration by an associate director from the Office of International Affairs, this was a complex case involving cross-border telemarketing schemes, thousands of victims, multiple companies in which the defendant consistently changed the name of the company. So, under that guise, the district court found that the government reasonably pursued extradition. Now, from 2004 to 2005, the government made a tactical decision in an attempt to skirt this whole extradition process. Even if defendant had not contested extradition, it could have taken years. So, we believe it's a reasonable exercise of diligence to try to effectuate an arrest in U.S. soil. As noted as ER-298, that OIA Office of International Affairs associate director, who was the lead of the Canada team, put in a sworn declaration that this was a reasonable time in the context of the entire complex case to put together a request for extradition. So, we think that evidence supports the district court's finding that the government reasonably pursued extradition. So, under this prejudice analysis, you know, and giving deference to the district court, defendant... Maybe, I understand that you have that assertion by the government, but just explain to a dumb judge like me, why does it take eight months to prepare the first draft of the extradition request, another five months for DOJ to review it, a further five months for further revision before making the formal request? That doesn't sound like due diligence. So, Your Honor, again, I'd point the court to around ER-298, where there's a declaration from the OIA associate director. In the context of this case, the government needs to summarize the case, go through multiple revisions within the U.S. Attorney's Office and the Office of International Affairs. And I think that that declaration kind of outlines the process, especially in a case complex like this with multiple companies. And we put in the record how from 2000 to 2004, there are dozens of... You've mentioned that before about how complex this was. I'm finding it hard to understand that. This was just a classic case of customers being told lies, which you can prove were lies, in order to obtain money from them. You know, sort of fraud 101. The fact that there were several company names involved doesn't make it particularly complex. It struck me as a pretty simple case. Well, in the context of the investigations that the Office of International Affairs had seen, and given that Canada was not within the U.S.'s jurisdiction, that added additional complexity. So Your Honor... I would hope the government could move a little more quickly on a serial murder case or something like that. I'd hate to... I mean, it does seem that if, you know, do we get to say we're the I understand. I wouldn't think like what Judge Rakoff is saying. I don't think you need to be the most experienced deputy in the... I mean, I used to be a prosecutor. I'd say I could probably do this case after a year. You know? Understood, Your Honor. And I understand there's some concern with the time frame, but in the grand scope of this case, the defendant fought extradition for 10 years, a multi-day trial with international witnesses. There is an uncontroverted declaration in the records showing that this was not an unusual time request to put it together, and this court should give deference under clear error standard. And I think... I briefly want to turn to the... One last point about that before you turn to other things. If, in fact, the government routinely engages in inordinate delay in preparing extradition, and is it any defense to say, oh, this is the way we do it all the time. We always take a year and a half, except in the most emergency situations. That's the way we've been doing it since 1789. That wouldn't be a defense, would it? No, Your Honor. And it's noted in Alexander, the court found there there's a specific finding that I think the government was, I believe, negligent in producing its extradition request. So a district court can make that finding. So there's a protection to the defendant in that case. It's just the opposite here. The district court found the opposite, that the government was reasonable in its extradition request, and this court must provide deference to the district court. And like I argued before, the prejudice the defendant needs to show is based on that specific time period. So we argue he cannot show actual prejudice under Oguri and some of the other Supreme Court case law. But even if the court found somehow that the government had to rebut, we point to different evidence in our brief that shows the governess reported that prejudice. What is the evidence in the record from the defendant of prejudice? So he cites the dimming memories that he wasn't able to, I think, impeach some of the witnesses at trial. But again, that's not necessarily due to that 6.5-year delay or 2.5-year delay. As noted in defendant's closing at ER 1603-07, he used that to his advantage, saying, defendants or the government witnesses only worked there for a few days, 17 years ago. How can you believe them after they had pretrial meetings with government? So he used that clearly to his advantage. And again, like under Doggett, he has not shown specific exculpatory evidence. I'm pointing to Manning. Credit cards are not enough, saying they might have showed where I would have been. So, Your Honors, I'll briefly turn to show why the speedy trial right attaches at the filing of indictment in this case, not the complaint in 2000 when defendant was filed, but no arrest, had no restraints. I want to focus on two things. The Supreme Court's focus on the main evil of arrest and the purpose of a complaint. As noted in Marion and McDonald, the chief evil designed by the Sixth Amendment to protect is that of someone being in custody and a lengthy pretrial detention. That wasn't an issue here. Defendant was not arrested until 2007 by the Canadian authorities, and then he was released on bail. The Sixth Amendment protects in criminal prosecutions, not an investigation. In a complaint, the government cannot bring a defendant to trial under Federal Rule of Criminal Procedure 7. And as noted in Richardson, the Seventh Circuit, Judge Posner went through a detailed analysis as to why a complaint does not trigger the speedy trial right. He noted certain things that while a civil complaint under the civil rules initiates a case, it cannot initiate a felony prosecution. No prosecutor needs to sign onto that document. It's similar to something like a search warrant. It justifies an arrest, expands an investigation. And even in the Supreme Court case of McDonald, the court noted their findings, speedy trial right and not attached. It noted there's no criminal prosecution pending on which defendant could have been tried. Likewise, here in 2000, defendant could not have been tried on that complaint. So looking at the purpose of the Speedy Trial Act against, protect against lengthy pretrial detention, that simply was not an issue here. And again, I'd point this court to Loud Hawk. There's no limit protected by the Speedy Trial, a Sixth Amendment Speedy Trial regarding pre-indictment investigation. Even if the target is understood. Well, wouldn't it, wouldn't though, if you just do a plain language analysis, wouldn't the plain language tend to go towards the, wouldn't a better reading be the complaint as opposed to the indictment? So defendant focuses on the words, other formal charge. And I think this court's analysis and favors shows that a complaint does not fall under that other formal charge. I think it's a more simplistic reading of the Supreme Court's analysis saying, well, the Sixth Amendment protects against the accused. So therefore we'll look at Black's Law Dictionary and say, a complaint is someone who is accused. But we believe favors from the circuit has a better analysis, looking at the actual purpose of an indictment or information, which allows the government to bring a defendant to trial. Whereas with a complaint, a government is not allowed to bring a defendant to trial. So we understand that the purpose of your complaint was what? In this specific case, I believe it was a prophylactic measure in the event that defendant, as the record showed, traveled to the U.S. from time to time, could obtain an arrest warrant, like noted in the Seventh Circuit's case in Richardson, and perhaps arrest defendant and continue the investigation. So we believe, based on the Supreme Court's focus on the liberty restraints posed by arrest, which were not present when defendant was complained against in 2000. Well, are there rights that attach, that give prosecutors, let's say, arrows in their quiver by filing a complaint that they wouldn't, can they do things that they can't do if there's not a complaint? Perhaps with other jurisdictions, I'm not sure that the filing of a complaint might allow them to show that they're progressing an investigation. But in this case, specifically, an arrest warrant and the Seventh Circuit's case... Well, okay, but if you just file a complaint against someone, but then you don't go to an indictment, at some point you have to dismiss that, don't you? I mean, you just can't leave it hanging out there, right? Yes, Your Honor. As Mary noted, the statute of limitations encourages prompt investigations, and defendants also protected by the due process clause, like the district court noted here. This due process clause is not violated. I see I'm out of time, unless the court has any questions. Let me see if my colleagues have any. Judge Watford or Judge Rakoff, do you have any additional questions of Mr. Shea? I have a quick question on the expert issue, though obviously that's not the central issue in this case. So as I understand it, correct me if I'm wrong, your agent took the stand and said, I've investigated lots of other cases like this involving other people, and here's how they operate. Do I have that right? Yes, based on his training experience in other cases. Yes, so please tell me how that, I know we hear that kind of evidence all the time, but how it complies with Dalbert and Kumho Tire and Rule 702. What was the methodology he used? What was the error rate? What attempts did he make to test whether he was getting it right or wrong in those other cases? I didn't see any of that. So your honor, I will answer that question. Just to note, in the defendant's motion in Lemonade, challenged the reliability of that expert, and the district court found him reliable, and the defendant does not challenge that on appeal. But I guess to answer your question specifically, so it's not an issue before this court. It's an abuse of discretion issue, and it's not before this court, and I think the court found his testimony reliable, and it's just the ultimate issue here that's analyzed under plain error, as we note in the brief. Thank you. I don't think anyone appears to have any additional questions. Thank you, Mr. Shea. Okay, Mr. Weiss, you have two minutes. Thank you, your honor. First, going to the issue of the complaint triggering the Sixth Amendment right. None of the courts have ever hinged the triggering of the right on whether there's an accusatory document that the government can actually go to trial on. In fact, in the Supreme Court decision Klopfer, which we discussed in the opening brief, at issue there was a state court procedure where the government filed an indictment, but then filed, I'm going to butcher the prosecution, but the indictment stayed, was lingering. However, they could not proceed to trial on that indictment before filing an additional document requesting with the court to reinstate it. I'd also point out that a complaint can be, the government can go to trial with a complaint on a misdemeanor. So with other than that issue going to trial in the document, I think these distinctions between indictment information and complaint are really versus a complaint. A complaint is sworn by a law enforcement officer before a magistrate judge, and it specifies a particular charge that it is bringing against the defendant. The information is just signed by a prosecutor. And the Supreme Court has explained that a complaint has to be based on probable cause because, quote, it must be adequate to begin effectively the criminal process prescribed by the federal criminal rules. That's in a case called Javin 381 U.S. 214. So these distinctions between these three different documents seem very formalistic and don't go to the heart of the issue, which is whether there's an accusatory document pending. And finally, the statute of limitations does not offer sufficient protection here. What we have is a five-year statute of limitations. So you can have a pre-trial, pre-indictment delay that the Supreme Court has called extraordinary five years without, by the government's position at all, the conviction and either dismiss or order a new trial, unless there are any other questions. All right. Any additional questions? Thank you both for your helpful argument in this matter. This case will stand submitted. This court will be in recess until tomorrow at 9 a.m. All right. If the judges hang on, we'll go to the rubbing room.
judges: Callahan, Watford, Rakoff